```
           IN THE UNITED STATES DISTRICT COURT
       FOR THE WESTERN DISTRICT OF PENNSYLVANIA
```

| | |
|---|---|
| JACKIE JORDAN, )<br>)<br>    Plaintiff, )<br>)<br>        vs. )<br>)<br>JO ANNE B. BARNHART, )<br>Commissioner of Social Security, )<br>)<br>    Defendant. ) | Civil Action No. 05-1385 |

**MEMORANDUM OPINION**

## I.  INTRODUCTION

Pending before the Court are cross-motions for summary judgment filed by Plaintiff Jackie Jordan and Defendant Jo Anne B. Barnhart, Commissioner of Social Security. Plaintiff seeks review of a final decision by the Commissioner denying his claim for supplemental security income benefits ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.*[1] For the reasons discussed below, Plaintiff's motion is denied and Defendant's motion is granted.

## II.  BACKGROUND

### A.  Factual Background

Jackie Jordan suffered a fractured skull when he was nine years old and subsequently developed a seizure disorder when he was

---

[1] A person is eligible for supplemental security income benefits if he is "disabled" (as that term is defined elsewhere in the regulations) and his income and financial resources are below a certain level. 42 U.S.C. § 1382(a).

approximately 13. (Certified Copy of Transcript of Proceedings before the Social Security Administration, Docket No. 6, "Tr.," at 255.) Sometime in 1999, he was injured when struck by a car while walking along the road. (Tr. 256.) Although he had worked intermittently for many years, on August 12, 2003,[2] Mr. Jordan protectively filed an application for supplemental security income benefits. In a disability report prepared on September 13, 2003, Plaintiff claimed he was unable to work due to seizure disorder, depression, epilepsy, a learning disability, chronic pain on the right side of body, and vision problems. (Tr. 99.)

B.   Procedural Background

The application filed on August 12, 2003, was initially denied on March 4, 2004 (Tr. 46-49), after which Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") on March 19, 2004. (Tr. 50-51.)

On January 5, 2005, a hearing was held before the Honorable Karl Alexander at which Plaintiff was represented by counsel. Judge Alexander issued his decision on March 18, 2005, again denying benefits. (Tr. 14-27.) The Social Security Appeals Council declined to review the ALJ's decision on June 10, 2005,

---

[2] An earlier claim was filed on November 17, 1999, which was denied on February 8, 2000, more than two years prior to the protective filing date of the application considered by the ALJ in this case. The ALJ concluded that there was no basis for re-opening the prior application. (Tr. 17.) Plaintiff does not object to this decision. Therefore, the Court will only address evidence which pertains to the period of adjudication covered by the ALJ's decision, that is, August 12, 2003, through March 18, 2005.

finding no error of law or abuse of discretion and concluding the decision was based on substantial evidence to support his findings. (Tr. 9-11.) Therefore, the March 18, 2005 opinion became the final decision of the Commissioner for purposes of review. 42 U.S.C. § 405(h); Rutherford v. Barnhart, 399 F.3d 546, 549-550 (3d Cir. 2005), *citing* Sims v. Apfel, 530 U.S. 103, 107 (2000). Having been granted additional time in which to file a civil action (Tr. 7), Plaintiff filed suit in this Court on October 5, 2005, seeking judicial review of the ALJ's decision.

C.   Jurisdiction

This Court has jurisdiction by virtue of 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g)) which provides that an individual may obtain judicial review of any final decision of the Commissioner by bringing a civil action in the district court of the United States for the judicial district in which the plaintiff resides.

III. **STANDARD OF REVIEW**

The scope of review by this Court is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389 (1971); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999). Findings of fact by the Commissioner are considered conclusive if they are

supported by "substantial evidence," a standard which has been described as requiring more than a "mere scintilla" of evidence, that is, equivalent to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, id. at 401. "A single piece of evidence will not satisfy the substantiality test if the [ALJ] ignores, or fails to resolve a conflict, created by countervailing evidence." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).

This Court does not undertake *de novo* review of the decision and does not re-weigh the evidence presented to the Commissioner. Schoengarth v. Barnhart, 416 F. Supp.2d 260, 265 (D. Del. 2006), *citing* Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986) (the substantial evidence standard is deferential, including deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence.) If the decision is supported by substantial evidence, the Court must affirm the decision, even if the record contains evidence which would support a contrary conclusion. Panetis v. Barnhart, CA No. 03-3416, 2004 U.S. App. LEXIS 8159, *3 (3d Cir. Apr. 26, 2004), *citing* Simmonds v. Heckler, 807 F.2d 54, 58 (3rd Cir. 1986), and Sykes v. Apfel, 228 F.3d 259, 262 (3rd Cir. 2000).

## IV. LEGAL ANALYSIS

### A. The ALJ's Determination

In determining whether a claimant is eligible for

supplemental security income or disability insurance benefits, the burden is on the claimant to show that he has a medically determinable physical or mental impairment (or combination of such impairments) which is so severe he is unable to pursue substantial gainful employment[3] currently existing in the national economy. The impairment must be one which is expected to result in death or to have lasted or be expected to last for not less than twelve months. 42 U.S.C. § 1382c(a)(3)(C)(i); Morales v. Apfel, 225 F.3d 310, 315-316 (3d Cir. 2000).

To determine a claimant's rights to either SSI or disability insurance benefits,[4] the ALJ conducts a formal five-step evaluation:

(1) if the claimant is working or doing substantial gainful activity, he cannot be considered disabled;

(2) if the claimant does not suffer from a severe impairment or combination of impairments that significantly limits his ability to do basic work activity, he is not disabled;

(3) if the claimant does suffer from a severe impairment which meets or equals criteria for an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") and the condition has lasted or is expected to last continually for at least twelve months, the claimant

---

[3] According to 20 C.F.R. § 416.972, substantial employment is defined as "work activity that involves doing significant physical or mental activities. . . . Work may be substantial even if it is done on a part-time basis." "Gainful work activity" is the kind of work activity usually done for pay or profit.

[4] The same test is used to determine disability for purposes of receiving either type of Social Security benefits. Burns v. Barnhart, 312 F.3d 113, 119, n1 (3d Cir. 2002). Therefore, courts routinely consider case law developed under both SSI and DIB applications.

>    is considered disabled;
>
> (4) if the claimant retains sufficient residual functional capacity[5] ("RFC") to perform his past relevant work, he is not disabled; and
>
> (5) if, taking into account the claimant's RFC, age, education, and past work experience, the claimant can perform other work that exists in the local, regional or national economy, he is not disabled.

20 C.F.R. § 416.920(a)(4); see also Morales, 225 F.3d at 316.

In steps one, two, and four, the burden is on the claimant to present evidence to support his position that he is entitled to Social Security benefits, while in the fifth step the burden shifts to the Commissioner to show that the claimant is capable of performing work which is available in the national economy.[6] Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000).

Following the prescribed analysis, Judge Alexander first concluded that Mr. Jordan had not engaged in substantial gainful activity since alleging disability on August 12, 2003. (Tr. 18.) Resolving step two in Plaintiff's favor, the ALJ found that he suffered from seizure disorder and chronic pain in his back, right knee, and right arm, together with a major depressive disorder, all

---

[5] Briefly stated, residual functional capacity, or RFC, is the most a claimant can do despite his recognized limitations. Social Security Ruling 96-9 defines RFC as "the individual's maximum remaining ability to perform work on a regular and continuing basis, i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule." See also 20 C.F.R. § 416.945.

[6] Step three involves a conclusive presumption based on the listings, therefore, neither party bears the burden of proof at that stage. Sykes, 228 F.3d at 263, n2, citing Bowen v. Yuckert, 482 U.S. 137, 146-147 n5 (1987).

6

of which the ALJ concluded were "severe" impairments as that term is defined by the Social Security Administration. (Tr. 19.) With regard to Plaintiff's reported headaches, the ALJ noted:

> The claimant also has subjective complaints of headaches; this is of course a completely subjective condition and the claimant lacks credibility to a significant degree. The [ALJ] does not believe that there is sufficient, reliable longitudinal evidence to establish a disabling impairment in this regard, or even to establish a severe impairment. Nevertheless, while non-severe, his headache impairment has been considered with his other severe impairments in limiting the claimant to low stress, unskilled work with avoidance of workplace hazards or climbing ladders, ropes or scaffolds.

(Tr. 19.)

At step three, the ALJ concluded that Plaintiff's impairments, taken alone or in combination, did not satisfy any of the criteria in 20 C.F.R. Part 404, Subpart P, Appendix 1. He specifically considered Listing 11.00, Neurological Disorders, in reviewing Plaintiff's seizure disorder; Listing 1.00, Musculoskeletal System, in reviewing the pain in his back, right knee and right arm; and Listing 12.04 in reviewing his depressive disorder. (Tr. 19-24.) At step four, the ALJ concluded that Mr. Jordan could not perform his previous work as a floor cleaner or laborer in a manufacturing company, activities which the vocational expert ("VE") at the hearing, Larry A. Bell, classified as unskilled, medium to light work. (Tr. 24, 297.)

In response to the ALJ's hypothetical question, Mr. Bell stated that there were numerous light jobs such as laundry folder

or hand packer which an individual of Mr. Jordan's age, education, and physical/mental limitations could perform in the local or national economy. (Tr. 24-25.) Therefore, based on Plaintiff's status as a younger individual[7] with a "limited" (i.e., eighth grade) education, a work history of unskilled occupations which did not provide transferrable skills, his residual functional capacity, and the medical evidence of record, the ALJ determined at step five that Mr. Jordan was not disabled and, consequently, not entitled to benefits. (Tr. 25.)

B.  Plaintiff's Arguments

Plaintiff raises only one argument on appeal, that is, the ALJ erred as a matter of law by rejecting uncontradicted evidence that his headaches constitute a "severe impairment" and, consequently, by discontinuing consideration of this impairment at step two of the analysis. (Plaintiff's Brief in Support of Motion for Summary Judgment, Docket No. 10, "Plf.'s Brief," at 5.) This error was compounded in that the ALJ failed to include the effects of Plaintiff's headaches in his hypothetical question to the Vocational Expert. (Id. at 12-13.)

Pursuant to Social Security regulations, an impairment is considered "severe" when it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R.

---

[7] Plaintiff was 40 years old at the time of the hearing, making him a "younger" person according to Social Security regulations. 20 C.F.R. § 416.963(c).

8

§ 416.920(c). The mere presence of a condition is not sufficient to establish disability; rather the claimant must show that the severity of his disease precludes him from engaging in any substantial gainful activity. Alexander v. Shalala, 927 F.Supp. 785, 792 (D. N.J. 1995); Walker v. Barnhart, No. 05-2282, 2006 U.S. App. LEXIS 5719, *8 (3d Cir. Mar. 6, 2006). As noted above, the claimant has the burden of proof at step two of the analysis. Kirk v. Comm'r of Soc. Sec., No. 05-2942, 2006 U.S. App. LEXIS 7995, *6 (3d Cir. Mar. 31, 2006); Bowen v. Yuckert, 482 U.S. 137, 146 n5 (1987). Like the other findings of an ALJ, the decision at step two must be supported by substantial evidence. Ahearn v. Comm'r of Soc. Sec., No. 05-2530, 2006 U.S. App. LEXIS 2850, *7-*8 (3d Cir. Feb. 6, 2006).

In arriving at his conclusion that Plaintiff's headaches were not severe, Judge Alexander noted that he failed to find in the record "sufficient, reliable longitudinal evidence to establish a disabling impairment in this regard, or even to establish a severe impairment." (Tr. 19.) The Court agrees with this conclusion as can be seen from a review of the medical records pertaining to Plaintiff's claims of debilitating migraine headaches, particularly the reports of Drs. Karuna Manda and Vijay Ragoor.

Dr. Manda, a neurologist, first evaluated Mr. Jordan on September 24, 2003. Mr. Jordan reported to Dr. Manda that some three years earlier, he began experiencing headaches three or four

times a week, triggered by bright lights and physical activity. (Tr. 256.) The headaches were described as "pounding" and "pressure-type" headaches which affected his forehead and face, and were accompanied by photophobia, phonophobia, nausea, blurred vision, dizziness, and eye pain. Mr. Jordan had treated his headaches with over-the-counter Tylenol as needed. Dr. Manda's preliminary diagnosis was "headaches, possibly migranous type." He suggested that Mr. Jordan maintain a headache calendar and recommended treatment with Neurontin or Topamax.[8] (Tr 255-259.)

On October 27, 2003, Mr. Jordan was again treated by Dr. Manda. At that time, he denied having experienced any headaches since his last visit, that is, for more than one month. Dr. Manda's diagnosis regarding his headaches was "possibly migraines," which were to be treated with Depakote.[9] (Tr. 252-254.) Neither Neurontin nor Topamax is listed among the drugs prescribed at that time.

Plaintiff's third and (apparently) final examination by Dr. Manda took place on January 2, 2004. Mr. Jordan reported that since October, he had experienced "occasional headaches," but there

---

[8] Among other uses, Neurontin (gabapentin) is used to help control certain types of epileptic seizures. Topamax (topiramate) is also used to control some types of epileptic seizures and to help prevent migraine headaches. See www.nlm.nih.gov/medlineplus.

[9] Depakote (valproic acid) is used to treat epileptic seizures and to help prevent migraine headaches. See www.nlm.nih.gov/medlineplus. At the time of Dr. Manda's recommendation, Mr. Jordan was already taking one 500 mg tablet of Depakote three times a day for his seizure disorder. (Tr. 254.)

10

is no evidence he maintained the headache calendar as previously suggested by Dr. Manda. (Tr. 249.) The neurologist's diagnoses at that time included "headaches, currently improved, continue treatment with Neurontin 100 one tablet [three times a day]; recommend patient maintain a headache calendar." (Tr. 251.)

Plaintiff contends that the ALJ "conveniently" omitted any reference to the reports of Dr. Vijay Ragoor who diagnosed migraine headaches, not "possible" migraine headaches as did Dr. Manda. (Plf.'s Brief at 12.)

First, it is inaccurate to state that the ALJ omitted any reference to Dr. Ragoor's consultative examinations. (*See* Tr. 21, 22, 23 where the ALJ cites Dr. Ragoor's reports, Exhibit C-16F.) Dr. Ragoor, also a neurologist, examined Plaintiff on two occasions, the first on December 30, 2004.[10] He noted that Mr. Jordan had a past medical history significant for asthma[11] and a "fractured skull 31 years ago." His initial diagnoses were seizure disorder, migraines, tremors, back pain, depression, and anxiety. (Tr. 265-268.) At the second examination on January 28, 2005, Dr. Ragoor simply repeated these diagnoses. However, it appears he

---

[10] Comparing the last date of Dr. Manda's treatment and the first by Dr. Ragoor demonstrates that Mr. Jordan did not seek any treatment for possible migraine headaches for almost a year, lending further support to the ALJ's conclusion that the headaches were not severe.

[11] It is curious that despite the extensive medical documentation in Plaintiff's case file, Dr. Ragoor appears to be the only physician to note a history of asthma. Although Plaintiff reported asthma in an undated disability report (*see* Tr. 131), the medical record contains no complaints of or treatment for this condition.

also ordered a brain MRI which was conducted on February 1, 2005. (Tr. 264.) As the ALJ noted, the MRI showed bifrontal encephalomalacia[12] which was consistent with a CT of the head on June 28, 2004. (Tr. 23, 264, 238.)

In making the argument that the ALJ erred by finding his headaches were not severe, Plaintiff contends that "there is absolutely no basis in the record, or in common sense, for the ALJ's assertion that migraine headaches are a completely subjective condition."  (Plf.'s Brief at 11.)  To the contrary, the medical literature indicates that migraine headaches cannot be detected by imaging techniques, laboratory tests, or physical examination, but are linked to disturbances in cranial blood flow. According to the on-line edition of the Merck Manual home edition,

> Migraines are diagnosed on the basis of symptoms. No procedure can confirm the diagnosis. If headaches have developed recently or if the pattern of symptoms has changed, computed tomography (CT) or magnetic resonance imaging (MRI) of the head is performed to exclude other disorders.

See www.merck.com, "Migraines."

The ALJ did not err by concluding that migraine headaches are a subjective condition since it is clear from the record that, consistent with what appears to be typical medical practice, Drs. Manda and Ragoor based their diagnoses on Mr. Jordan's subjective

---

[12] Encephalomalacia is defined as a softening of the brain due to degenerative changes in nervous tissue.  See www.nlm.nih.gov/medlineplus.

12

description of his symptoms.

The record also shows that Mr. Jordan did not complain of headaches to other physicians who treated him at the same time as Drs. Manda and Ragoor. For instance, in August 2003, Mr. Jordan was examined by Dr. May Flores regarding his complaints of depression, epilepsy, pain and learning disability. At that time, Plaintiff was taking Allegra for allergies, Clonazepan for depression, Depakote for seizures, and Paxil for anxiety. Each of those was reported to have "bad headaches" as a side effect, but there is nothing to indicate that Dr. Flores believed the headaches were migraines. (Tr. 102.)

Mr. Jordan apparently did not mention headaches to the Social Security field officer who prepared a disability report on September 15, 2003, since the only impairments included in the report were depression, epilepsy, a learning disability, pain on the right side of his body, bilateral vision problems, and seizures. (Tr. 99.) In an undated disability report filed sometime thereafter, Mr. Jordan reported epileptic seizures 3 or 4 times a week; tremors; convulsions; back, knee and shoulder pain, depression and asthma. (Tr. 131.) There is no mention of any type of headache.

In a daily activities report dated October 15, 2003, Mr. Jordan reported that he got "headaches in the sun" and therefore was unable to do yard work. (Tr. 119.) No other limitations were

attributed to headaches.

Plaintiff underwent a consultative examination by Dr. Aster Assesa on February 2, 2004. There is no mention of headaches in the sections on present or past illnesses. (Tr. 192.) In the section on review of systems, Mr. Jordan complained of shortness of breath and of pain in his right knee, lower back, and right arm, but again, did not mention headaches. (Tr. 193.)

Dr. Delia Melton treated Plaintiff from June 30, 2003 to April 16, 2004. An intake questionnaire completed by Plaintiff on June 30, 2003, does not mention headaches as a current illness, but indicates that he has experienced headaches in the past. (Tr. 224-225.) Dr. Melton's "problem list" includes hyperthyroidism, chronic obstructive pulmonary disease ("COPD"), chronic back pain and nicotine dependence, but does not mention possible migraine or any other type of headache. (Tr. 231.)

Finally, in evidence submitted to the Appeals Council (but not to the ALJ), Plaintiff submitted an employability assessment form dated April 18, 2003. (Tr. 271.) He stated therein that he was unable to work because of epileptic seizures and pain in his right arm, leg and back. On September 21, 2003, this was amended to include complaints of depression. (Tr. 271.) In a medical report attached to the employability assessment, Dr. Melton indicated Mr. Jordan's diagnoses were seizure disorder, hyperthyroidism, chronic back pain and COPD.

At the hearing, Plaintiff testified that his headaches occurred "two or three times a week" and lasted "three or four hours." (Tr. 282.) One would rationally expect someone suffering such regular and intense headaches to report them to his treating physicians, but with the exceptions of the reports from Drs. Manda and Ragoor, this testimony is inconsistent with the medical evidence as a whole.

In sum, as the ALJ pointed out, the medical record does not include reports of severe headaches prior to September 2003. There is no evidence that Plaintiff received any emergency room or other hospital treatment for migraines at any time. Assuming Plaintiff accurately reported in September 2003 that he had been experiencing severe headaches for the past three years, i.e., since September 2000, he continued to work until October 31, 2002, further evidence that any headaches he experienced were not debilitating. (*See* disability report at Tr. 100.) The ALJ reasonably concluded, based on the evidence, that Mr. Jordan's subjective complaints regarding the severity and frequency of his headaches were not entirely credible. Even so, the ALJ repeatedly noted that he included Plaintiff's headaches when ascertaining his physical limitations. (*See*, e.g., references to headaches as non-severe impairments at Tr. 20 and 23.)

Citing McCrea v. Barnhart, 370 F.3d 357, 360-361 (3d Cir. 2004), Plaintiff argues that in light of the findings of Drs. Manda

and Ragoor and his own testimony, the ALJ erred by finding at step two that his headaches were not severe. We conclude, however, that McCrea is easily distinguishable. In that case, the ALJ terminated his analysis at step two, finding that none of the claimant's impairments - pain in her neck, lower back, and spine, along with frequent headaches - were disabling. McCrea, 370 F.3d at 358-359. The Court of Appeals, noting that at step two the burden on a claimant is "not an exacting one," concluded the ALJ had erred by denying benefits at step two. Id. at 360. In arriving at that decision, the Court pointed out that McCrea's statements regarding the nature and extent of her pain were well supported by the medical record; her treatment history further established that her impairments had more than a minimal impact on her ability to do basic work activities; and her statements were corroborated by those of her treating physician. Id. at 361-362. Here, as shown by the summary of evidence above, the comprehensive medical record does not support Plaintiff's claims regarding the severity of his headaches, and he continued to work for more than two years after he claimed the allegedly chronic headaches had begun. Moreover, Judge Alexander did not terminate his analysis at step two, but continued throughout his analysis to incorporate limitations based on those complaints.

Finally, Plaintiff argues that because the ALJ did not include limitations based on his headaches in the hypothetical question

16

posed to the Vocational Expert, the question was inaccurate and thus the case should be remanded for further consideration. (Plf.'s Brief at 12-13.)

A proper hypothetical question must reflect "all of a claimant's impairments that are supported by the record" in order for the response by the vocational expert to be considered substantial evidence. Page v. Barnhart, No. 03-4122, 2004 U.S. App. LEXIS 18558, *8 (3d Cir. Sept. 2, 2004), quoting Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). We find, as the Court of Appeals did in Page, that Plaintiff's complaints of disabling migraines are not supported by the record. Therefore, we conclude the ALJ's questioning of the vocational expert was proper. Page, id., citing Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002) (question posed to the vocational expert must include impairments supported by "medically undisputed evidence" in the record).

We conclude that at step two, Plaintiff failed to establish through medical evidence of record that his headaches were a severe impairment. Consequently, the ALJ's decision to exclude them from further consideration as such was not error. Plaintiff's motion for summary judgment must therefore be denied. An appropriate order follows.

December 8, 2006

William L. Standish
United States District Judge

cc:  Karl E. Osterhout, Esq.
     1789 South Braddock Avenue
     Suite 570
     Pittsburgh, PA 15218
     Email: karl@keolaw.com

     Lee Karl, Esq.
     United States Attorney's Office
     700 Grant Street
     Suite 4000
     Pittsburgh, PA 15219
     Email: lee.karl@usdoj.gov